UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.: _____

04-30054- MAP

| | |
|---|---|
| DEBORAH ST. PETER and <br> MATTHEW BOGACZ, <br>               Plaintiffs <br><br> v. <br><br> TOWN OF AGAWAM, TOWN OF <br> AGAWAM POLICE DEPT., <br> AGAWAM POLICE CHIEF <br> ROBERT CAMPBELL <br> ANTHONY GRASSO, JAMES <br> WHEELER, RICHARD NILES, <br> KEITH BOPKO, JOHN MOCCIO, <br> OFFICER MCGOVERN <br>               Defendants | **COMPLAINT AND DEMAND <br> FOR JURY TRIAL** |

## INTRODUCTION

Through this action, the Plaintiffs, Deborah St. Peter and Matthew Bogacz, seek damages for injuries suffered when they were brutally beaten by members of the Agawam Police Department on March 24, 2002 and then prosecuted for crimes they did not commit. The beatings arose out of a purported speeding violation and escalated into violence on the part of the Agawam Police officers involved. The Plaintiffs assert federal and state civil rights claims against police officers Anthony Grasso, James Wheeler, Richard Niles, Keith Bopko, John Moccio, and McGovern as well as their employer, the Town of Agawam. Plaintiffs further assert state negligence claims pursuant to M.G.L. c. 258 against Police Chief Robert Campbell and the Town of Agawam and state common law tort claims of negligent and intentional infliction of emotional distress against each of the individual Defendants.

## JURISDICTION

This action is brought pursuant to 42 U.S.C §1983 and in accordance with the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28

1

U.S.C. § 1331 and 1343 as well as the aforementioned statutory provisions. Plaintiffs invoked the pendant jurisdiction of this court to hear and to decide claims arising under M.G.L. c. 12 §11, M.G.L. c. 258 §4 and other state law claims arising under Massachusetts law.

## PARTIES

1. Deborah St. Peter ("St. Peter") is a citizen of the United States and a resident of the Commonwealth of Massachusetts.

2. Matthew Bogacz ("Bogacz") is a citizen of the United States and a resident of the Commonwealth of Massachusetts.

3. Defendants Anthony Grasso ("Grasso"), James Wheeler ("Wheeler"), Richard Niles ("Niles"), Keith Bopko ("Bopko"), John Moccio ("Moccio"), Officer McGovern ("McGovern") were at all times material to this case duly appointed police officers for the Town of Agawam. Each of the Defendants is named herein in both his individual and official capacity.

4. Defendant Robert Campbell was at all times material to this case Police Chief for the Agawam Police Department.

5. Defendant Town of Agawam (the "Town") is a municipality duly incorporated under the laws of the Commonwealth of Massachusetts.

## FACTUAL BACKGROUND

6. On or about March 24, 2002, Plaintiffs St. Peter and Bogacz resided at 44 Sheri Lane in Agawam, Massachusetts.

7. On or about March 24, 2002, at around midnight, St. Peter and Bogacz were returning home from attending a charity event in Springfield, Massachusetts.

8. As Plaintiffs' vehicle slowed to turn on to their street, they observed a police cruiser pass them traveling in the opposite direction. Plaintiffs proceeded to pull into their parking lot and park their vehicle in a space near the entrance of their condominium.

2

9. Plaintiff Bogacz, who had been driving Plaintiff St. Peter's motor vehicle, exited the vehicle and began walking toward his residence. St. Peter remained with the vehicle, gathering together personal items.

10. As Bogacz crossed the parking lot, he observed an Agawam police cruiser pull up to him. The cruiser lights were not flashing.

11. Officer Grasso exited the police cruiser and asked Bogacz for his license and registration. Bogacz questioned Officer Grasso why he needed to produce the license. Officer Grasso did not answer the question, but again demanded to see Bogacz's license and registration.

12. After repeated requests to know why his license was being checked, and hearing no answer from Officer Grasso, Bogacz reached for his wallet. At that time Officer Grasso grabbed Bogacz, got one handcuff on him, slammed him on the hood of his cruiser and said, "You are under arrest." Grasso then pepper-sprayed Bogacz.

13. Officer Grasso then attempted to spin Bogacz around and in so doing knocked both Grasso and Bogacz to the ground.

14. Officer Grasso scrambled on top of Bogacz with his knees on his arms and repeatedly punched him in the face.

15. Meanwhile, Plaintiff St. Peter had been observing this from her vehicle and began yelling, "Under arrest for what?" Officer Grasso responded that she should "Shut the f--up…and mind your own business."

16. St. Peter continued to ask what Officer Grasso was doing to him, stating that Bogacz did not do anything wrong.

17. St. Peter saw Grasso hit Bogacz in the face and exclaimed that she was going to call the police.

18. As St. Peter walked to the lawn adjacent to the parking lot, she saw one police cruiser with lights flashing pulling into the parking lot.

19. Thinking these police officers would help her, St. Peter was surprised when two officers jumped out of the car and ran toward her, slamming her into a stockade fence and knocking her to the ground.

20. St. Peter began to cry and scream, "You're hurting me, why are you doing this to me?" and "We didn't do anything wrong, why are you doing this to us?"

21. One of the officers put his knee into St. Peter's back, handcuffed her, and yanked her to her feet by the elbows.

22. St. Peter was then able to witness four or five police officers beating Bogacz, who had been pepper-sprayed a second time and was yelling to the officers that he was not resisting.

23. St. Peter saw officers hit Bogacz in the head, while he was handcuffed, with their mag lights and fists.

24. Officer Bopko was standing between Bogacz's legs, which were spread apart, and was kicking him in the chest.

25. Bogacz was then rolled over onto his stomach as the blows continued. Once on his stomach, Bogacz and St. Peter then heard an officer who had been standing by watching exclaim, "Witness, witness!" repeatedly. The beating then stopped.

26. St. Peter was then roughly removed from the scene and thrown in the back of a police cruiser and subsequently removed from the cruiser and shoved approximately 65 feet away to the paddy wagon and shoved inside.

27. Once Bogacz was rolled onto his stomach, the officers then cuffed his other hand and pepper-sprayed him for a third time. Two officers, one of whom was Officer Bopko, brought Bogacz over to a cruiser and as they walked yelled at him to "Stop resisting!" Bogacz said, "What? I'm not resisting!" The officers repeated their warning for the benefit of the now crowd of onlookers and then slammed him into the trunk of the cruiser. They then opened the door,

shoved Bogacz into the cruiser and Officer Bopko then leaned into the car and struck Bogacz in the cheek twice.

28. After sitting in the cruiser for approximately two minutes, Bogacz was then removed and carried to the paddy wagon. One of the officers opened the rear door of the wagon, slammed it into Bogacz's head twice and then threw him in the back with St. Peter. St. Peter was crying and asking Bogacz why the police had done this to them as they had done nothing wrong. Bogacz was unable to answer her because he was having trouble breathing from all the pepper spray, he could not see, and was on the verge of losing consciousness.

29. St. Peter and Bogacz were then transported to the Agawam Police Department. At the station, Sergeant Niles said to them, "I am Sergeant Niles. Lets get one thing straight—if you don't comply with everything we say and do everything we tell you to, we will break your f------ necks and bury you in the back of the police department. Got it?"

30. St. Peter was brought inside for questioning. Plaintiff had difficulty responding because she was crying so hard. St. Peter asked to make a phone call twice before Officer Wheeler responded, "Shut the f--- up, you're not getting a phone call—got it!" The third time she asked, she was able to make a call.

31. Plaintiff asked for her lawyer, to which the officers responded, "Oh, you're going to be difficult—you'll stay in jail until Monday then!" St. Peter cried even harder and said "No, I want someone here to protect me. After I saw what just happened I don't know if I'll be okay here. I want my lawyer here for my safety." Officer Wheeler told St. Peter to shut up.

32. St. Peter was booked, read her rights, and thrown in a cell. She was released at 5:30 a.m. on Sunday, March 24, 2002.

33. Bogacz was processed and able to make his phone call at approximately 2:00 a.m. Plaintiff was threatened by four different officers while he was incarcerated. The officers repeatedly

5

stated that he was a cop beater and that if they saw him walking down the street they would break his legs. Bogacz remained in jail until 3:00 p.m. on Sunday, March 24, 2002.

34. When Bogacz's personal belongings were returned to him, he found a speeding ticket in with his other possessions. The ticket alleges that Bogacz was traveling 60 miles per hour in a 40 mile per hour zone, despite the fact that he was slowing to make a left hand turn and the officer was traveling past him in the opposite direction.

35. Bogacz was charged with disorderly conduct, two counts of assault and battery on a police officer, resisting arrest, failure to stop for police, assault and battery with a dangerous weapon, and speeding.

36. St. Peter was charged with disorderly conduct, assault and battery on a police officer, and resisting arrest.

37. When Plaintiffs were both released from the Agawam Police, they went to Noble Hospital to seek treatment for their injuries. Pictures were taken. Bogacz sustained contusions and abrasions to his eye, head, face, mouth, shoulder and back as well as pain and soreness in his jaw, forehead, shoulders and back. He was also nauseous.

38. St. Peter had multiple contusions on her face, wrists, arms right shoulder and upper back as well as an abrasion on her left arm.

39. Upon St. Peter's arrival at home, she found that her vehicle had been towed. Plaintiff telephoned the Agawam Police Department, who told her it had been towed because there was a civil infraction against the driver.

40. On Monday, March 25, 2002, St. Peter went to Sarat Ford to retrieve her vehicle. The towing report stated that the vehicle had been towed because it was unregistered, which was a false statement. At all times, St. Peter's vehicle was properly registered and insured. Officer Grasso was the individual who had called in the tow.

41. St. Peter again called the police department and was told that the vehicle was towed for "probable cause." Upon information and her vehicle had been thoroughly searched by the police officers after St. Peter and Bogacz were removed from the scene on March 24, 2002.

42. Plaintiffs have suffered severe physical, emotional and economic damages as a result of Defendant's actions. Since March 24, 2002, both Bogacz and St. Peter have been stalked by several different Agawam police officers and have lived in fear for years of the Agawam Police.

43. Plaintiffs have incurred significant legal expenses defending against the criminal charges.

44. The criminal charges were disposed of with no criminal finding of guilt on part of the Plaintiffs.

## COUNT I
### (v. Town of Agawam for Violation of 42 U.S.C. §1983)

45. Plaintiffs incorporate by reference paragraphs 1 through 44, *supra*, and reallege the same as if originally set forth herein.

46. Plaintiffs Deborah St. Peter and Matthew Bogacz were deprived of their Civil Rights as secured by the First, Fourth, Fifth and Fourteen Amendments to the United States Constitution as a result of the custom and practice of the Town of Agawam which was to act deliberately indifferent toward the rights of individual citizens.

47. The Plaintiffs, Deborah St. Peter and Matthew Bogacz, were deprived of their Civil Rights as secured by the First, Fourth, Fifth and Fourteen Amendments to the United States Constitution as a result of the Town of Agawam's gross negligence in the hiring, training and supervision of its police officers.

48. As a direct and proximate result of the violation of 42 U.S.C. §1983 by the Town of Agawam, the Plaintiffs sought the injuries described herein.

## COUNT II
### (v. City of Agawam for Violation of M.G.L. c. 258, §4)

49. Plaintiffs incorporate by reference paragraphs 1 through 48, *supra*, and reallege the same as if originally set forth herein.

50. Defendant Town of Agawam owed to the Plaintiffs Deborah St. Peter and Matthew Bogacz a duty to exercise reasonable care in hiring, supervising and training of its employees, including but not limited to Defendants Grasso, Wheeler, Niles, Bopko, Moccio, and McGovern which it failed to do and so breached its duty of care.

51. As a direct and proximate result of the negligence of the Defendant Town of Agawam the Plaintiffs have suffered injuries described herein.

## COUNT III
### (v. Anthony Grasso, James Wheeler, Richard Niles, Keith Bopko, John Moccio, Officer McGovern, for Violation of 42 U.S.C. §1983)

52. Plaintiffs incorporate by reference paragraphs 1 through 51, *supra*, and reallege the same as if originally set forth herein.

53. By engaging in the conduct described above, Defendants Grasso, Wheeler, Niles, Bopko, Moccio, and McGovern violated the Plaintiffs' civil rights as secured by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

54. As a direct and proximate result of actions of the Defendants in intimidating, harassing and beating the Plaintiffs in violation of 42 U.S.C. §1983, the Plaintiffs suffered the injuries described herein and other damages including but not limited to attorney's fees, emotional distress, lost wages, invasion of privacy, loss of property, and loss of liberty.

## COUNT IV
### (v. Anthony Grasso, James Wheeler, Richard Niles, Keith Bopko, John Moccio, Officer McGovern, for Intentional Infliction of Emotional Distress)

55. Plaintiffs incorporate by reference paragraphs 1 through 54, *supra*, and reallege the same as if originally set forth herein.

56. Defendants Grasso, Wheeler, Niles, Bopko, Moccio, and McGovern knew or should have known that their conduct as described above would likely result in the Plaintiffs suffering emotional distress.

57. Defendants' actions were intentional, reckless, extreme, outrageous, beyond all bounds of decency, and utterly intolerable in a civilized community.

58. Defendants' actions did cause the Plaintiff to suffer severe emotional distress of such a nature that no reasonable person could or should be expected to endure it.

## COUNT V
### (v. Town of Agawam for Negligent Infliction of Emotional Distress)

59. Plaintiffs incorporate by reference paragraphs 1 through 58, *supra*, and reallege the same as if originally set forth herein.

60. The Defendant, the Town of Agawam, owed the Plaintiffs a duty of care.

61. The Defendant, the Town of Agawam, by and through its agents and employees, including Grasso, Wheeler, Niles, Bopko, Moccio, and McGovern breached its duty of care to the Plaintiffs by engaging in the conduct described above.

62. The Defendant Town of Agawam's actions as described above did cause the Plaintiffs to suffer severe emotional distress and physical injury of such a nature that no reasonable person could or should be expected to endure it.

## COUNT VI
### (v. Anthony Grasso, James Wheeler, Richard Niles, Keith Bopko, John Moccio, Officer McGovern, for Assault and Battery)

63. Plaintiffs incorporate by reference paragraphs 1 through 62, *supra*, and reallege the same as if originally set forth herein.

64. The Defendants, Grasso, Wheeler, Niles, Bopko, Moccio, and McGovern, without right or privilege, intentionally and in concert with each other assaulted and beat the Plaintiffs in an extreme and outrageous manner.

65. As a direct and proximate result of the assault and battery the Plaintiffs suffered physical injuries and other damages described herein.

## COUNT VII
### (v. All Defendants for violation of 42 U.S.C. 1983—Conspiracy to Violate Civil Rights)

66. Plaintiffs incorporate by reference paragraphs 1 through 65, *supra*, and reallege the same as if originally set forth herein.

67. By engaging in the conduct described above, the Defendants, acting in concert with each other, acted to conspire and thereby violated the Plaintiffs' civil rights, particularly those rights secured by the First, Fourth, Fifth and Fourteen Amendments to the United States Constitution.

68. As a direct and proximate result of the conspiracy engaged in by the Defendants, Plaintiffs suffered the injuries and other damages described herein.

## COUNT VIII
### (v. All Defendants for Violation of M.G.L. c. 12, §11I)

68. Plaintiffs incorporate by reference paragraphs 1 through 68, *supra*, and reallege the same as if originally set forth herein.

69. By engaging in the conduct described above including threats, intimidations and coercion, the Defendants Grasso, Wheeler, Niles, Bopko, Moccio, and McGovern interfered with and deprived the Plaintiffs of their exercise and enjoyment of their civil rights secured under the laws of the Commonwealth of Massachusetts in violation of M.G.L. c. 12, §11H-I.

70. As a direct and proximate result of the violation of M.G.L. c. 12, §11H-I, the Plaintiffs suffered the injuries and other damages including but not limited to attorney's fees, emotional distress, lost wages, loss of property, and loss of liberty described herein.

## COUNT IX
### (v. All Defendants for False Imprisonment)

71. Plaintiffs incorporate by reference paragraphs 1 through 71, *supra*, and reallege the same as if originally set forth herein.

72. On or about March 24, 2002, the Plaintiffs were unlawfully and intentionally confined against their will, without right or privilege. This was the direct result of the unlawful conduct of the Defendants, jointly and severally.

73. As a direct and proximate result of the acts described above, the Plaintiffs incurred attorney's fees, emotional distress, lost wages, loss of property, and loss of liberty and were otherwise damaged.

## COUNT X
### (v. Individuals for Abuse of Process)

74. Plaintiffs incorporate by reference paragraphs 1 through 74, *supra*, and reallege the same as if originally set forth herein.

75. The defendant police officers initiated the police stop, arrest and prosecution, using legal process for improper purposes and/or otherwise perverted the case of legitimate process.

76. The defendant had improper motives and/or otherwise acted with malice.

77. The police officers conduct damaged the Plaintiffs as described herein and otherwise suffered damage to reputation.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court award compensatory and punitive damages, attorney's fees, costs and interest and all such other and further relief, as this court deems necessary, fair and appropriate.

**THE PLAINTIFFS DEMAND A JURY TRIAL ON ALL COUNTS.**

The Plaintiffs,
DEBORAH ST. PETER and MATTHEW BOGACZ
By Their Attorney,

Date: March 15, 2004

/s/ Dawn M. McDonald

Dawn D. McDonald, BBO#647256
Lisa Brodeur-McGan, BBO # 556755
Cooley, Shrair P.C.
1380 Main Street
Springfield, MA 01103
Tel (413) 781-0750; Fax (413) 733-3042

46550